George A. Sheltra
vs. } No. 68205.
Mary A. O'Rourke, et al.

March 29, 1930.

BLODGETT, P. J. Heard by the Court without a jury.

Action of assumpsit to recover for certain labor and material used in the construction of a building.

As to one of the defendants, Thomas O'Rourke, the action was non-suited.

Under a contract in writing signed by Mary O'Rourke and George A. Sheltra September 11, 1925, Sheltra agreed to furnish all labor and materials for the construction of a two and a half story building, and to receive in compensation therefor ten per cent of the total cost thereof. Plaintiff has filed a bill of particulars in which the total amount claimed for labor and materials furnished under said contract is $10,515.70, including the 10% commission. In addition plaintiff claims $180 as a three per cent commission for negotiating a mortgage for $6,000 for defendant.

June 21, 1926, (Deft's Ex. B), plaintiff sent defendant a statement showing debits of $10,515.70 and credits of $6,981.85, making the balance due $3,533.85.

The defence is that the work was not done in a workmanlike manner.

Defendant called William H. Cruise, a contractor, who examined the house in February, 1930, and testified to fifteen items in which the work was faulty:

First, that the cellar floor was uneven and a faulty job and that to replace same would cost $234;

Second, that under floor in bath room was split around the plumbing —would cost $10 to repair;

Third, that brick underpinning at junction leaks—would cost $100 to repair;

Fourth, that the furnace pipes constituted a fire hazard — would cost $20 to repair;

Fifth, that chimney was poorly constructed without thimbles—would cost $10 to repair;

Sixth, that canvas covering on piazza roof was poorly laid—would cost $25 to repair;

Seventh, that putty fallen out of window frames would cost $25 to repair;

Eighth, that a leak in gutter on porch roof would cost $15 to repair;

Ninth, that plaster socket in hall would cost $10 to repair;

Tenth, that a French door was poorly fitted and would require $20 to make it right;

Eleventh, that on second floor plaster ceiling was cracked and would require $171 to replace;

Twelfth, that bath room should be

replastered and repaired at a cost of $275;

Thirteenth, that a dormer window on 3d floor should be cased at a cost of $10;

Fourteenth, that outside clapboards should be replaced at a cost of $200;

Fifteenth, that all floors on third floor should be replaced at a cost of $100.

From the testimony of this witness all these defects named were due to faulty workmanship and the gross amount would be $1,225 needed for replacement.

The plaintiff produced as an expert Thomas H. Doane, who testified specifically as to the several items enumerated above, and that the same did not disclose faulty workmanship:

The cellar floor while somewhat rough and uneven was durable and did not require relaying;

That there was a slight water stain on brick underpinning; that the stains were old and amounted to nothing;

That there was a 12-inch space above furnace pipes and no sign of any fire menace;

That there was no need of replacing canvas roof; that boarding would shrink in time and that the canvas only needed repainting;

That the window frames were not split and that the window casings were the ordinary stock casing for this type of house;

That in some casings putty was falling out which was common in this grade of sash;

That the French door, due to shrinkage, showed a one-half inch space. It was not faulty work, as the house was not timbered for a heavy job;

That the ceiling on second floor showed some cracks, skin cracks. It was not faulty work and there was no need of new plastering.

That the second story bath room was not a high class job but was durable. The plastering was somewhat rough; that a place 12 x 24 inches required repairing; that it was not necessarily due to poor workmanship; that it would cost $15 to repair it;

That the attic was unfinished. If a window casing were put in, it would have to be paid for by owner. That there was no call for a casing;

That some outside clapboards were split and cracked; that the material was fir, Western spruce, and very straight grained and easy to split; that weather works on them easily; that they are not split any more than could be expected after five years' use; they should have been taken care of when house was repainted within five years; not faulty workmanship; they should have been repainted within five years;

That the top floors were very good and showed good workmanship.

We have thus two experts, both reputable and competent contractors, who have examined the work and reached opposite conclusions.

In analyzing the testimony it must be borne in mind that the house was built upon a cost plus contract. The more expensive the material used and the more expensive the labor employed, the more it would cost the owner, and the contractor would be entitled to a larger sum for his services.

No question is raised that the pay rolls were padded or that an unfair price was charged for materials which were bought at the ordinary market price. The house was an ordinary two-tenement house, built either to sell or rent. The house has been finished about four years and both experts examined same in February of this year.

The real issue is this: Did the defendant receive what the contract called for?

There is always a guarantee that the work will be done in a workmanlike

manner. The rule must be reasonably applied. A building of this size might cost anywhere from $10,000 to $40,000 or more. The same rule as to workmanship can not be applied to each. Can it reasonably be conceived that an ordinary house of this type after four or more years of use and occupation would not show some cracks in the plaster and some shrinkage in the woodwork? There is no testimony on the part of defendant that up to February, 1930, any repairs had been made or any attempt made to remedy the alleged defects.

The court is of the opinion that the standard by which the expert for defendant judged this house was too high and that the expert for plaintiff was more reasonable and just.

There is an item in the bill of particulars of $180, being a 3% commission for negotiating a mortgage of $6 000. This money was raised for the benefit of plaintiff and applied upon the contract. The court is not satisfied that plaintiff has sustained the burden of proof as to any agreement on the part of defendant to pay such a commission.

The plaintiff is entitled to recover $3,533.85 less $25 for repairs to second floor bath room, being $3,508.85 and interest at eighteen per cent.

Decision for plaintiff for $4,245.70.

For plaintiff: Peter W. McKiernan, John C. Gerry.

For defendant: Fergus J. McOsker.